IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL WINSLOW, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 23-4930 |
| | : | |
| EXTRA STORAGE SPACE and | : | |
| LOGAN HARMAN, | : | |
| | : | |
| Defendants. | : | |

**Goldberg, J.**                                                                                                              June 5, 2025

Plaintiff Randall Winslow rented two climate-controlled storage lockers at Defendant Extra Space Storage in Malvern, Pennsylvania. According to Plaintiff, Extra Space failed to maintain a climate-controlled environment, and his items were damaged. He brought this lawsuit against Extra Space, setting forth claims for negligence, breach of contract, consumer fraud, unfair trade practices, fraud by deception, and negligent misrepresentation. Plaintiff also sued Logan Harmon, the District Manager for Extra Space Management, the company operating the Malvern Facility.

On October 18, 2024, Defendants moved for summary judgment on all claims. Plaintiff filed his Response on October 24, 2024, an Affidavit on October 29, 2024, and a Memorandum in Opposition to Defendants' Motion on November 18, 2024.[1] For reasons addressed below, Defendants' motion will be granted.

---

[1] Under my policies and procedures, parties may file sur-reply briefs only with leave of the Court, and only under limited circumstances. Plaintiff properly filed his response on October 24, 2024. (ECF No. 31). Plaintiff's additional filings are improper, but understanding that Plaintiff is proceeding *pro se*, I will consider his additional "Affidavit" and "Memorandum." (ECF Nos. 32, 35). Plaintiff's other responses will not be considered for the purpose of this motion. Nonetheless, I note that nothing in those filings would change this summary judgment analysis.

I.   STATEMENT OF FACTS

The following facts are derived from the evidence submitted by the parties. Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view such evidence in the light most favorable to Plaintiff.[2]

Under my policies and procedures, "[t]he papers opposing a motion for summary judgment shall include as a separate exhibit a short and concise statement . . . [that] responds to the numbered paragraphs set forth in the moving party's Statement of Undisputed Facts." Policies and Procedures at 8–9, https://www.paed.uscourts.gov/judges-info/district-court-judges/mitchell-s-goldberg. Failure to dispute facts will result in those facts being deemed undisputed. Id., see also Fed. R. Civ. Pro. 56(e). I will grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. Pro. 56(e).

II.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff originally entered into a contract with Storage U.S.A. for the lease of a storage locker. (ECF No. 27 at ¶ 22.) On or about July 14, 2005, Extra Space sent a "Change of Ownership" letter that stated:

> We are making some changes to your lease and want to make sure you were informed. Attached to this letter is a standard lease for Extra Space Storage. In the event that the terms of your current lease and the attached lease conflict, the terms in the attached lease govern; provided that if any of the terms of the attached lease are not acceptable to you, you may terminate your lease and vacate the premises within thirty (30) days of the date of this letter. Absent such termination, the modifications to your current lease will be effective as of [insert date].

(Id. at ¶ 40.)

---

[2]   To the extent a statement is undisputed by the parties, I will cite only to the parties' submissions. If a statement is disputed and the dispute can be easily resolved by referencing the exhibits, I will cite the supporting exhibits. If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute. I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

As Plaintiff has never disputed that he received and accepted the terms of the above-mentioned lease, I consider it a binding agreement between the parties.[3] That agreement states, *inter alia*, that:

> 16) Operator . . . shall not be liable to Customer for any damage or loss . . . to any property stored in the Space, arising from any cause whatsoever, . . . except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law. Customer shall indemnify and hold Operator . . . harmless from any and all damage, loss, or expense arising out of or in connection with any damage to any . . . property, occurring in the Space . . . arising in any way out of Customer's use of the Facility, even if such damage or loss is caused entirely or in part by the negligence of Operator . . . .
> 17) Climate controlled spaces are heated and cooled depending on outside temperature. These spaces do not provide constant internal temperature or humidity control. Operator does not warrant or guarantee temperature or humidity ranges in the Space due to changes in outside temperature and humidity, or due to other considerations, and Customer understands and assumes the risk of climate controlled spaces not meeting certain temperature and humidity requirements.
> . . .
> 21) Operator's Agents are not authorized or permitted to make any warranties about the Space or the Facility. Operator's Agents' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES and shall not be relied upon by Customer. The entire agreement and understanding of the parties hereto are embodied in this writing and NO OTHER WARRANTIES are given.
> . . .
> 36) . . . Operator and Customer agree that no arbitration, small claims court proceeding or any other action or proceeding shall be brought against Operator or Customer more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises or whether based on tort, contract or any other legal theory.
> . . .
> 40) This Agreement contains the entire agreement of the parties and no representation or agreements, oral, or otherwise, between Operator and Customer not embodied herein shall be of any force or effect (except for written addenda agreed to between the parties).

(Id. at ¶ 45–46, 61, 81; see also Ex. B at 16–20.)

Plaintiff stored "valuable family heirlooms, antiques, and documents" at the Malvern Facility, but did not obtain insurance coverage for this property. (ECF No. 27 at ¶ 52, 54–55.) Plaintiff alleges that, on

---

[3] Plaintiff acknowledges the rental agreement and argues that various provisions of the agreement must be strictly construed or rendered unenforceable. (See ECF No. 31 at 2; see also ECF No. 35 at 4.)

3

or about February 25, 2022, he visited the Facility and found his property damaged. (Id. at ¶ 65.) According to him, this damage was a result of large temperature fluctuations at the Facility. (ECF No. 31 at 3.) Plaintiff provides as evidence, pictures dated as early as February 6, 2022, which appear to show thermometer readings from inside the Facility. (Id. at ¶ 66; ECF No. 25.)

On October 26, 2022, Plaintiff wrote a letter regarding the alleged temperature fluctuation to the CEO of Extra Space. (ECF No. 27 at ¶ 71.) On December 13, 2023, Plaintiff filed his initial Complaint against Extra Space, alleging a failure to maintain a climate-controlled facility, which resulted in damage to his property. (ECF No. 1.) On February 12, 2024, Plaintiff filed the operable Amended Complaint. (ECF No. 5.) Plaintiff asserts that, due to Defendants' actions, he is entitled to: (a) the cost of replacing the damaged or destroyed belongings; (b) the cost of a trailer and lot in Montauk, NY (for storage of his belongings); (c) severe emotional distress; and (d) punitive damages. (Id. at 4.)

Plaintiff named Defendant Logan Harmon in his role as an employee of Extra Space Management, and does not make allegations against Defendant Harmon in his personal capacity. (ECF No. 27 at ¶ 79–80.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016).

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a

4

sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Federal courts, exercising diversity jurisdiction, apply state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

## IV. DISCUSSION

### A. Negligence

#### 1. Exculpatory Clauses

Clause 16 prevents Extra Space from being liable for the damages Plaintiff allegedly incurred. It is generally accepted that an exculpatory clause is valid where three conditions are met: (1) the clause does not contravene public policy, (2) the contract is between persons relating entirely to their own private affairs, and (3) each party is a free bargaining agent to the agreement such that the contract is not one of adhesion. Topp Copy Prods., Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993). Plaintiff appears to argue that the clause is invalid because it contravenes public policy and represents a contract of adhesion.

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring that the contract is against public policy." Williams v. GEICO Gov't Emples. Ins. Co., 32 A.3d 1195, 1200 (Pa. 2011) (quoting Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998)). "In the absence of a plain indication of [such a] policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy." Id. (omission in original).

Plaintiff argues that under Valhal Corp. v. Sullivan Assoc., the contract provision violates public policy. 44 F. 3d 195 (3d. Cir. 1995). However, Valhal states that waivers of liability "violate public policy

5

only when they involve a matter of interest to the public or the state." Id. at 206. Matters of interest to the public or state "include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." Id. "A common carrier is one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally." Lynch v. McStome & Lincoln Plaza Associates, 437, 548 A.2d 1276, 1279 (Pa. Super. Ct. 1988) (internal quotation omitted), see also 66 Pa. Cons. Stat. § 102 (defining "Common carrier"). A "public utility" is defined under Pennsylvania law as not including storage facilities. 66 Pa. Cons. Stat. § 102 (defining "Public utility").

Plaintiff has not identified any long governmental practice, statutory enactments, or obvious ethical or moral standards relevant to the current dispute. Nor does Extra Space qualify as a common carrier, or public utility. As such, the contract is not invalid on public policy grounds.

Plaintiff also argues that Clause 16 is unenforceable as it is part of a contract of adhesion. A contract of adhesion is typically a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms." Chepkevich v. Hidden Valley Resort, L.P., 2 A.3d 1174, 1190 (Pa. 2010) (quoting BLACK'S LAW DICTIONARY 342 (8th Ed. 2004)). However, exculpatory agreements involving the use of commercial facilities for voluntary athletic or recreational activity have been found not to constitute contracts of adhesion "because the signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services[.]" Milshteyn v. Fitness Int'l, 271 A.3d 498, 504 (Pa. Super. Ct. 2022) (quoting Toro v. Fitness Int'l LLC, 150 A.3d 968, 975 (Pa. Super. 2016)).

Additionally, "[o]nce a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it are unconscionable." Todd Heller, Inc. v. UPS, 754 A.2d 689, 700 (Pa. Super. Ct. 2000) (discussing a provision that waived any liability for consequential damages on the part of a shipper of goods.). "[F]or a Court to deem a contractual provision

unconscionable it must determine both 'that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" Id. at 701 (quoting Harris v. Green Tree Financial Corporation, 183 F.3d 173, 181 (3d Cir. 1999)). Unconscionability does nothing more than reaffirm the most basic tenet of the law of contracts—that parties must be free to choose the terms to which they will be bound. Centric Bank v. Sciore, 263 A.3d 31, 39 (Pa. Super. 2021) (citations omitted and formatting altered). A consumer does not lack meaningful choice where they contract with a non-exclusive supplier, and otherwise fail to demonstrate that they would be unable to negotiate with other suppliers. See Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992).

Furthermore, Pennsylvania courts have recognized a public policy of allowing a commercial carrier "to reasonably limit their potential staggering monetary liability for the infinite possible panoply of consequential damages which could result from" the loss of a shipped good. Todd Heller, 754 A.2d at 701 (quoting Husman v. Purolator Courier, 832 F.2d 459, 461 (8th Cir. 1987)). The court recognized limitation of liability clauses allow a "carrier to avoid unforeseeably high liability for especially valuable cargo," thereby "permit[ing] shippers of ordinary items to pay lower rates" while shippers of valuable cargo remain able to obtain insurance for their valuable goods. Id. (citing Hill Construction Company v. American Airlines, 996 F.2d 1315, 1317 (1st Cir. 1993)).

In Kane v. U-Haul Int'l, Inc., the Third Circuit, applying New Jersey law, found an exculpatory clause in a storage rental agreement not an unconscionable contract of adhesion as: (1) there was no evidence suggesting storage was a necessity, (2) there is no suggestion that there were no other self-storage facilities in the area, and (3) Plaintiff had a choice to purchase insurance. 218 Fed. Appx. 163, 167 (3d. Cir. 2007).

While Kane applies New Jersey law, its reasoning is consistent with what has been articulated by Pennsylvania courts, and I find it compelling. First, Plaintiff has not demonstrated that self-storage was a necessity. Like in Milshteyn, the contract does not relate to essential services. Second, Plaintiff has

7

provided no evidence that he could not store his goods at another self-storage facility. Like in <u>Dellinger</u>, Plaintiff has not established that Extra Space was an exclusive supplier. Finally, Plaintiff remained free to purchase insurance for his possessions. Like the carriers in <u>Todd Heller</u>, preventing a storage facility from waiving liability for damages to stored goods would subject them to unforeseeably high liability and raise prices for the storage of ordinary items. It is therefore not unconscionable to expect consumers to acquire insurance to protect their property.

In summary, Plaintiff has failed to demonstrate that the exculpatory clause in the contract represented an unconscionable adhesion contract.

Plaintiff's alternative argument is that the clause is unenforceable because it broadly attempts to waive liability, including for Extra Space's own negligent actions. According to Plaintiff, Pennsylvania courts strictly construe exculpatory clauses, particularly when they attempt to relieve a party from liability for its own negligence or failure to deliver on fundamental promises. Plaintiff cites <u>Topp Copy</u> for this proposition. 626 A.2d 98. However, that case explicitly states, "[a]ll that the law requires in the case of a tenant's waiver of his landlord's responsibility for losses resulting from his negligence is that it shall be plainly expressed." <u>Id</u>. at 101. <u>Topp Copy</u> involved a waiver of "any and all liability for damages that may result" from certain sources. <u>Topp Copy Prods., Inc. v. Singletary</u>, 591 A.2d 298, 300 (Pa. Super. Ct. 1991) <u>rev'd</u> 626 A.2d at 101. The Pennsylvania Supreme Court found summary judgment appropriate because that language plainly expressed what was being waived. <u>Topp Copy</u>, 626 A.2d at 101. The court explained that a release of a "landlord 'from all liability for any and all damage caused by water'" was "so definite and precise [that] there can be no doubt of [its] meaning" and therefore effectively released the landlord "from negligence unless wanton or willful . . . ." <u>Id</u>. (quoting <u>Cannon v. Bresch</u>, 160 A. 595, 597 (Pa. 1932)).

Like in <u>Topp Copy</u>, Clause 16 applies to "any damage or loss . . . to any property stored in the Space, arising from any cause whatsoever, . . . except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law." (ECF No. 27 at ¶ 46.) This language plainly expresses that

8

damages, even those resulting from Defendants' negligence, are waived. This provision is therefore valid and enforceable against Plaintiff.

### 2. Time-Barred

Plaintiff's cause of action is also barred by the contractual limitations period in Clause 36, which prevents either party from bringing suit "more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter . . . ." (ECF No. 27 at ¶ 81.)

Plaintiff concedes that he discovered his damaged possessions on February 25, 2022, but argues that the contractual limitation period is tolled under Pennsylvania's discovery rule. Plaintiff is correct that Pennsylvania recognizes the discovery rule as an exception to the normal limitations period. Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). "The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured." Id. "[T]he salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." Id. Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." Id. at 858–859.

Plaintiff is not entitled to application of the discovery rule as he admits that he discovered his alleged injury on February 25, 2022, over a year and nine months prior to December 13, 2023, when Plaintiff filed his initial complaint. (ECF No. 1.) He nonetheless contends that he was investigating the cause of his injury prior to filing suit. It is unclear what Plaintiff was investigating as Plaintiff has stated that "[o]n or about February 25, 2022, [he] went to check his storage lockers and found that the temperature in the hallway . . . [was] well below the advertised temperature range [and] he realized that his family heirlooms may have been damaged due to the extreme cold temperatures. . . ." (ECF No. 5 at 2.) He further alleged that on February 25, 2022, when he opened his storage lockers, "he discovered that his belongings had been damaged or destroyed as a result of extreme temperature changes." (ECF No. 5

9

at 2.) Additionally, Plaintiff provides as evidence, pictures dated as early as February 6, 2022, which appear to show thermometer readings from inside the Facility. (E.g., ECF No. 25 at 121.) Plaintiff's statements and his submitted pictures demonstrate that he was aware of the cause of his alleged injury more than a year before he filed his original complaint. To the extent Plaintiff alleges that he was unaware that the temperature or lack of climate control caused his alleged damages, he has provided no evidence upon which a reasonable juror could so find.

While unclear, Plaintiff may be arguing that the discovery rule tolls the contractual statute of limitations while he develops evidence and determines the extent of his damages. That argument must be rejected as a matter of law. Plaintiff provides no support for this assertion, and I have found none. Pennsylvania courts have applied the discovery rule to toll the period before a Plaintiff becomes aware of the cause of his damage, not after. That Plaintiff may have been unaware of the amount of his damages on February 25, 2022, is of no relevance. Moreover, even if the discovery rule did toll the limitations period to allow Plaintiff to determine the extent of his damages, he was nonetheless required to exercise reasonable diligence. There is no evidence that he did so.

In the alternative, Plaintiff argues that Pennsylvania courts disfavor contractual limitations on the time to file claims. Plaintiff provides no support for this assertion, and I find none. Pennsylvania law specifically provides that "a shorter time [to file] which is not manifestly unreasonable [may be] prescribed by written agreement." 42 Pa. Cons. Stat. §5501. Pennsylvania courts have not found a one-year contractual limitation period to be manifestly unreasonable. See General State Authority v. Planet Ins. Co., 346 A.2d 265, 267 (Pa. 1975) (judgment on the pleadings in favor of defendant affirmed where suit was not commenced within the one-year contractual limitation period); Lardas v. Underwriters Ins. Co., 231 A.2d 740, 742-743 (Pa. 1967) (judgment in favor of defendant affirmed where plaintiff failed to commence action within one-year period established by contract); Toledo v. State Farm Fire & Casualty Co., 810 F. Supp. 156, 161 (E.D. Pa. 1992) (applying Pennsylvania law) (motion for summary judgment granted where suit was not brought within one-year contractual limitation period).

In sum, the Parties' contract contained a valid one-year contractual limitation period, and the Plaintiff failed to bring this action within that period. Furthermore, Plaintiff has failed to establish that he is entitled to the benefit of Pennsylvania's discovery rule.

Considering the exculpatory and limitation provisions of the parties' contract, there is no genuine issue of material fact that Plaintiff is entitled to recovery on his negligence claims. As such, summary judgment is appropriate as to this claim.

### B. Breach of Contract

Plaintiff has also alleged that Defendants breached the parties' contract by failing to provide him with a climate-controlled space. However, the contract clearly states that Extra Space does "not provide constant internal temperature or humidity control," "does not warrant or guarantee temperature or humidity ranges in the Space," and gives "NO OTHER WARRANTIES" not stated in the contract. As such, no reasonable juror could find that the contract was breached by Defendants' alleged failure to provide climate control. Additionally, Plaintiff's breach of contract claim was not brought within a year of discovering the alleged breach and is therefore barred by the contract's limitations period.

### C. Consumer Fraud, Unfair Trade Practices, Fraud by Deception, and Negligent Misrepresentation

According to Plaintiff, Defendants advertised climate-controlled units but failed to maintain such conditions. Plaintiff alleges that Defendants' actions constitute negligent misrepresentation and violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 P.S. § 201-1 et seq. While unclear, Plaintiff's claims of "consumer fraud" and "fraud by deception" also appear to arise from Defendants' advertisements.

To show a violation of the UTPCPL for a negligent misrepresentation, a plaintiff must "prove justifiable reliance and causation." Kirwin v. Sussman Auto., 149 A.3d 333, 336 (Pa. Super. Ct. 2016). Likewise, in Pennsylvania, fraud and negligent misrepresentation require proof of justifiable reliance. Id. at 336–37. While whether justifiable reliance existed is ordinarily a question of fact, courts will decide

11

the issue during summary judgment where a Plaintiff fails to present a genuine issue of material fact. Id. at 337. As Pennsylvania courts have explained, "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." Blumenstock v. Gibson, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) (enforcing on summary judgment a contract provision releasing seller from claims for "any defects or conditions on the Property.").

First, Plaintiff has not demonstrated that Defendants made a false statement. The only statements that Plaintiff points to are: (1) a listing on Extra Space's website which states that "units typically maintain a storage environment between 55 and 80 degrees throughout the year," (ECF No. 25-12), and (2) an alleged statement by Defendant Harmon "that the temperature should ideally be maintained between 55 and 80 degrees." (ECF No. 13). Plaintiff points to no statement by Defendants that Extra Space guaranteed a specific temperature, or range.

Yet, even if Defendants did make such a guarantee, Plaintiff could not have reasonably relied on that statements because the agreement stated that the rented space did "not provide constant internal temperature or humidity control[,] . . . [Extra Space] does not warrant or guarantee temperature or humidity ranges[,] . . . and Customer understands and assumes the risk of climate controlled spaces not meeting certain temperature and humidity requirements." Additionally, the contract states that "[Extra Space]'s Agents' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES and shall not be relied upon by Customer. The entire agreement and understanding of the parties hereto are embodied in this writing and NO OTHER WARRANTIES are given."

In sum, no reasonable juror could find that Plaintiff reasonably relied on any statement by Defendants, as the contract states explicitly that Extra Space did not guarantee temperature or humidity ranges. As such, summary judgment is appropriate on Plaintiff's claims for fraud, misrepresentation, and violation of the UTPCPL.

12

An appropriate order follows.[4] [5]

---

[4] Defendant raised other grounds in support of their Motion for Summary Judgment. I do not reach these grounds as summary judgment is appropriate for the reasons herein addressed.

[5] In his complaint Plaintiff raised concerns about security at the Facility. However, none of the alleged damages arise from any of these alleged security issues. (ECF No. ¶ 77.) Plaintiff, in response to Defendants' Motion has not disputed this, choosing to focus only on the climate-control issue. Therefore, to the extent Plaintiff is attempting to make a claim related to security, summary judgment will be granted on that claim.